[No. 21409. Department One. November 22, 1928.]

ELVINA WALDAL, *by her Guardian ad litem Cathinka Waldal, Respondent,* v. NORTHWESTERN MUTUAL FIRE ASSOCIATION, *Appellant.*[1]

*Shank, Belt & Fairbrook,* for appellant.
*Ben A. Maslan,* for respondent.

TOLMAN, J.—On October 28, 1921, the respondent obtained a judgment in the superior court for King county for five hundred dollars and costs against one F. J. Hoffman and against the community composed of F. J. Hoffman and Jane Doe Hoffman, his wife.

[1]Reported in 272 Pac. 58.

On February 5, 1925, F. J. Hoffman, by bill of sale, which was filed for record within ten days thereafter, conveyed to one Andrew Hoffman "all of the stock of goods, wares and merchandise, store fixtures, one Ford delivery car and good will of the business of the North Park Public Market," in consideration of "ten dollars and other valuable consideration."

F. J. Hoffman appears to have remained in charge of the business so conveyed, as the ostensible agent of Andrew Hoffman, and if any attempt was ever made to subject the assets of that business to the payment of the judgment, such attempts were unsuccessful, for the judgment remained wholly unsatisfied until it expired by limitation.

Prior to September, 1927, appellant issued to F. J. Hoffman two certain fire insurance policies covering the property described in the bill of sale or some parts of it. At the same time there were other policies outstanding, in the name of Andrew Hoffman, issued by the same company, perhaps not upon the same property, but upon the building and possibly upon other personal property contained therein.

On September 23, 1927, a fire occurred which destroyed the building and its contents, and it seems to be agreed that a total loss occurred under the two F. J. Hoffman policies. Appellant employed an independent adjuster, who went to the premises, found F. J. Hoffman there and, in conjunction with him and upon information furnished by him, prepared proofs of loss under all of the policies. Those written in the name of Andrew Hoffman we are not further concerned with and shall make no further mention of.

When the proofs of loss on the two policies written in the name of F. J. Hoffman were prepared and presented for signature, F. J. Hoffman then represented to the adjuster that he was, in fact, Andrew Hoffman,

the husband of F. J. Hoffman, who was the insured, and he executed and duly verified before a notary public the two proofs of loss, signing them F. J. Hoffman, by Andrew Hoffman, husband. The adjuster transmitted these proofs to the appellant company, where they were received on October 3, 1927. The officer in charge of appellant's loss department had some personal acquaintance with the Hoffmans, and knew that F. J. Hoffman, the insured, was a man. Therefore, he immediately returned the proofs of loss to the adjuster, with instructions to get them properly signed.

The adjuster seems to have used all reasonable effort to explain the situation to Hoffman, advise him of the impropriety of his actions and to induce him to properly execute the proofs of loss in his own name. This he refused to do, asserting that the insured property belonged to Andrew Hoffman, his father, that the name in the policies should have been that of Andrew Hoffman, and that the name F. J. Hoffman was written into the policies through mistake. No other proofs of loss were ever executed or transmitted to the appellant company covering the loss on these policies.

In the meantime and on September 30, 1927, respondent caused a writ of garnishment to be issued and served upon the appellant company in the usual form, requiring it to answer as to any indebtedness owing to F. J. Hoffman. F. J. Hoffman evidently knew of this fact, at least as early as when the proofs of loss were returned and he was requested to re-execute them properly. In fact, the adjuster, after so attempting to induce Hoffman to properly execute the proofs of loss, wrote to his company under date of October 7, 1927, saying in part:

"The conduct of F. J. Hoffman falsifying his identity has been most reprehensible, the purpose in view being to avoid payment of a judgment on record

against him, and I am inclined to think that his actions have been due to improper advice from his attorney."

On October 3, after having returned the proofs of loss to the adjuster for re-execution, the appellant company sent the writ of garnishment to its attorneys with a letter in which they said:

"The above numbered policies cover five hundred dollars each on store furniture and fixtures located at 103rd street and Woodland Park avenue, Seattle, Washington. The buildings on this location, as well as the furniture and fixtures, were completely destroyed by fire on September 23, 1927, and Mr. Hoffman, therefore, has a claim of one thousand dollars against the company. We were, however, on September 30, 1927, served with a writ of garnishment on account of judgment rendered against F. J. Hoffman on February 27, 1925. We are enclosing this writ of garnishment and shall be pleased to have you answer it for us. The claim as yet has not been paid and we await your advice before drawing any checks."

The attorneys examined the record of the judgment and seem to have been interviewed by the Hoffmans, their attorneys, and probably by respondent's attorney. In fact, at this time everybody connected with the case seems to have known as much about the facts as they know now, but whether the time was required for investigation or whether the delay was, in part, in order that a proper proof of loss might be filed, the answer of the garnishee was not made and verified until October 18, 1927, and probably was served and filed that day or the next.

The answer is a formal denial of indebtedness and nothing more, following the usual form with which all practitioners are familiar. This answer remained on file until the life of the judgment expired by limitation, without any controverting affidavit having been filed by the respondent or any motion made against it.

Thereafter, and after the judgment had expired, the

respondent brought this action against the insurance company, as defendant, seeking recovery from it of the amount of its judgment, costs and accumulated interest, upon the theory that, by reason of collusion and conspiracy between Hoffman and the insurance company, the insurance company had made a false answer to the writ of garnishment, knowing that the judgment upon which the writ was based would expire before respondent would be able to successfully act in the matter. This action was tried to the court, sitting without a jury, resulting in findings of fact which follow the complaint almost word for word, except that the court refused to find there was any collusion and conspiracy, and in place of that made a finding as follows:

"That the said F. J. Hoffman did file proofs of loss, and thereafter the defendant did advise its attorneys to file an answer to the writ of garnishment, admitting liability in a sum of money in excess of the judgment obtained against defendant F. J. Hoffman by the plaintiff herein; but that in spite of the admission of liability, the defendant corporation did answer no funds to said writ of garnishment, well knowing that, by the time plaintiff would be able to disprove and controvert said answer, plaintiff's judgment would expire."

A judgment followed in respondent's favor for seven hundred thirty-one dollars and seventy-eight cents, with interest from November 5, 1927, and costs. The insurance company has appealed from that judgment.

We need not now inquire as to what should have followed if the charge of collusion and conspiracy had been sustained. The trial court found there was nothing of that kind and, as the evidence is entirely clear and convincing to that effect, that element is removed from the case. Nor need we be troubled by the thought that the garnishee defendant, by its acts,

delays, or failure to set up the facts clearly in its answer, in any way misled the respondent. So far as here appears, she knew as much about the facts at all times as did the garnishee. Respondent's only argument which is at all persuasive is that, if the garnishee had in its answer set up the facts fully, she might have obtained a judgment on that answer before her judgment against Hoffman expired by limitation. We think not. Since no proper proof of loss had been made and there had been no waiver, we do not understand how such a judgment could have been entered. Or if it could be held that the proof made was a sufficient proof of loss, still if the garnishee by answer had disclosed (as it must in stating all the true facts) the claim of a mistake by which the name of F. J. Hoffman was written in the policies instead of the name Andrew Hoffman, those persons would have been entitled to their day in court before any judgment against the garnishee could have been entered.

Still more important, we think, is our statute directing the discharge of the garnishee if his answer is not controverted. Rem. Comp. Stat., § 691, reads:

"Should it appear from the answer of the garnishee that he is not indebted to the defendant, and was not so indebted when the writ of garishment was served on him, and that he has not in his possession or under his control any personal property or effects of the defendant, and had not when the writ was served; and when the garnishee is an incorporated or joint stock company in which the defendant is alleged to be the owner of shares of stock or interested therein, if it shall further appear from such answer that the defendant is not, and was not when the writ was served, the owner of any such shares or interested in such company, and should the answer of the garnishee not be controverted as hereinafter provided, and within the time hereinafter provided, the court shall enter judgment discharging the garnishee."

But, says the respondent, in the few days which remained before the life of the judgment would expire, there was no time to try out the issues which might be raised by a controverting affidavit. If the emergency had been disclosed to the court and proper steps taken to bring in the Hoffmans on supplemental proceedings at the same time, we think the whole matter could far more likely have been disposed of in such a manner than in any other way. But whether it could be disposed of or not, a controverting affidavit would have prevented the garnishee's discharge and given respondent all the time that remained in which to enforce her judgment. Without such controverting affidavit, under the statute, the garnishee must be discharged of all liability. The garnishee was therefore discharged and could not thereafter be held liable except for some act amounting in law to a fraud. Nothing of that nature has been established.

We, with the trial court, have no sympathy with Hoffman in his attempt to avoid payment of a just debt, but since, as we see it, the trial court's judgment is no bar to a proceeding by Andrew Hoffman to reform and enforce the policies, it seems unjust to place the whole responsibility for Hoffman's acts on the appellant, who was not a party thereto.

The judgment is reversed with directions to dismiss the action.

FULLERTON, C. J., MITCHELL, HOLCOMB, and BEALS, JJ., concur.